FELÍCITA MELÉNDEZ WIDOW OF LÓPEZ CANDELARIA ET AL., Plaintiffs and Appellees, *v.* VICENTE GARCÍA ESPINOSA ET AL., Defendants and Appellants.

No. 132. Decided December 5, 1962.

*Roberto Martínez Rodríguez* and *A. Cadilla Ginorio* for appellants. *Juan A. Díaz Marchand* and *R. V. Pérez Marchand* for appellees.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

The widow and minor children of a laborer who died in the course of his work brought this action for damages against defendants-appellants. The complaint alleged that on May 19, 1957 the deceased was working as a laborer for Timoteo Jiménez Feliciano, and at the request of defendant Jaime Talavera he went to the farm of codefendant Vicente García to cut and fell some palm trees on a sugar cane plantation located within that farm; that the work which the laborer was to perform was for the benefit of both defendants; that the laborer proceeded to fell the palm trees indicated by employer Timoteo Jiménez, without the said employer nor defendants García and Talavera providing him with the means of safety and defense required, or without affording any protection against the strong breeze which was blowing there and then increasing the labor risk. That after the laborer had already felled some palm trees and was ready to fell another, "a sudden gust of wind tore and threw

the last palm tree on the laborer, trapping him under its weight and causing such serious injuries that he died several hours later"; and that the accident was due to the negligence, carelessness, and fault of defendants García and Talavera because, knowing as they did, the rugged and dangerous topography of the place where the laborer was going to fell the palm trees, and knowing that the atmospheric conditions that day were adverse for such work, they did not lend him at any time any help for his personal safety and defense in such a hazardous job. The answer denied the facts of the complaint and set up as defense that the deceased was an insured laborer of employer Timoteo Jiménez; that the State Insurance Fund compensated the death as a labor accident; that at the request of employer Timoteo Jiménez, defendant García gave him several coconut palm trees and the employer and his laborer proceeded to fell them, without defendants intervening or having any connection at all with the accident.

At the opening of the hearing of the case and after a recess to confer with the attorneys in chambers, the trial court entered in the record the following stipulation: "Defendants admit the following allegations: (1) Defendants Vicente García Espinosa and Jaime Talavera Serrano are farmers and property owners in the ward of Pajuil of Hatillo, Puerto Rico. (2) On May 19, 1957 the said Antonio López Candelaria was working as a laborer for Timoteo Jiménez Feliciano. (3) The said laborer proceeded to fell the palm trees indicated by his employer Timoteo Jiménez Feliciano. (4) After laborer Antonio López Candelaria had already felled several palm trees and was ready to fell another, his death was caused by injuries which he received there. All the other allegations are denied. Plaintiff admits that laborer Antonio López Candelaria was reported as an insured laborer of employer Timoteo Jiménez Feliciano, and that his widow and children were compensated by the State Insurance Fund."

It appears from the record that on October 30, 1957 the State Insurance Fund entered a decision compensating this death, setting forth that the laborer was working *in the employment* of Timoteo Jiménez Feliciano; that he had sustained an accident while felling a palm tree for the *said employer*, as a result of which he died, and that the case was covered by the Workmen's Accident Compensation Act.[1] The trial court made the following findings of *fact:*

"1.     .     .     .     .     .     .     .

"2. That that day [May 19, 1957], and at the request of defendant Jaime Talavera Serrano, laborer Antonio López Candelaria went to the farm of codefendant Vicente García Espinosa in the ward of Pajuil of Hatillo, P.R., to cut and fell some coconut palm trees for the benefit of both defendants.

"3. That a strong breeze was blowing that day which increased the risk of the work to be performed by the said Antonio López Candelaria, and that, notwithstanding they knew that it was a dangerous job, defendants failed to give the said laborer any material help nor even provided him with means of safety and defense for the dangerous task of felling, alone, those palm trees under such adverse conditions.

"4. That as a result of such failure and negligence on the part of defendants toward laborer Antonio López Candelaria, as he was getting ready to fell the sixth palm tree, on rugged land and without supporting cables or any material help for his defense, *the wind uprooted it and threw the palm tree on the said laborer, trapping him* and causing such serious injuries that he died a few hours later in the District Hospital of Arecibo.

"5. That although the deceased laborer, as has been said, was caused to appear on that day of May 19, 1957 as an em-

---

[1] According to § 31 of the Workmen's Accident Compensation Act of 1935, as amended by Act No. 70 of June 15, 1955 (Sess. Laws, p. 258), in those cases in which the injury, occupational disease, or death entitling the workman or his beneficiaries to compensation under the Act has been caused under circumstances making third parties liable for such injury, disease, or death, the workman or his beneficiaries may claim damages from such third party within one year following the date when the decision of the case by the Manager of the Fund becomes final. In such cases the Manager shall subrogate himself in the rights of the workman or his

ployee of Timoteo Jiménez Feliciano, an insured employer, receiving a wage of $3.40, the evidence of the case has shown that he never actually worked for that employer but for defendants Talavera and García. That he actually worked for them on that date, but defendants were not insured at the time with the State Insurance Fund."

All the conclusions of law of the trial court dealt with plaintiffs' right to bring such action under § 31 of the Workmen's Accident Compensation Act, further concluding that since it did not appear from the record nor from the evidence that the Manager of the Fund had filed a complaint in that or in some other court against defendants, the right of subrogation granted by law was deemed to be waived.[2]

▆▆▆ Appellants herein maintain that the findings of fact of the trial court are not supported by the evidence, and they challenge the judgment ordering them to pay the amount of $14,000 as compensation and $1,000 for attorney's fees on the ground that they were at fault or negligent. The appeal before this Court involves fundamentally a problem concerning the court's findings of *fact*. In their brief, appellees argue that since this is a petition for review and not an appeal, the reviewing function is confined to the questions of law and to the rule of substantial evidence as to the facts. Clarification might perhaps be beneficial. By the petition

beneficiaries, and may institute proceedings against such third person in the name of the workman or of his beneficiaries within the 90 days following the date in which his decision becomes final and executory. The workman or his beneficiaries may not institute any action against the third party until after the lapse of 90 days from the date the decision of the Manager of the Fund becomes final and executory. In this case the decision of the Manager was rendered on October 30, 1957. The complaint was filed on February 6, 1958. Anyway, it does not appear from the record, and the court so concluded, that the Manager shall exercise the right of subrogation in this case by filing a complaint against defendants as third-party wrongdoers. *Cf. Waterman Steamship Corporation* v. *Rodríguez*, 290 F.2d 175.

[2] Regarding finding of fact *No. 5*, if in the action authorized by § 31 of the Workmen's Accident Compensation Act or in any other action the courts have power to admit evidence and to make independent pronounce-

for review created by Act No. 115 of 1958 (Sess. Laws, p. 279), this Court was vested with discretion to review or not a judgment of the Superior Court, which proceeding is different from the petition for review available prior and subsequent to that Act, which was and is proper as a matter of law. Once the court has exercised such discretion by deciding to review the case, the reviewing function is plenary and is not limited solely to questions of law, as is the case with review of rulings of certain agencies or special instrumentalities, nor is it limited to determining whether there is a sufficient quantum of evidence in the record to support the trial court's findings of fact. In such case our reviewing function is exercised to the same extent as it has been traditionally exercised in cases on appeal, and covers the review of findings of fact subject to certain applicable norms which have been clearly stated in *Sanabria* v. *Heirs of González*, 82 P.R.R. 851.

Let us see what was defendants' connection with the occurrence of this accident, as revealed by the record. The laborer's widow testified that on the afternoon of the day before the accident defendant Talavera stopped in front of her house about 60 feet away and that she heard him calling the laborer, and they talked about going there the next day to fell the remaining palm trees; that there would be more help to fell the trees, and that he mentioned Timoteo Jiménez, who was going to fell them with him; that the laborer told her that he planned to go because Talavera had asked him to work that day for him felling the palm trees, which was Sunday, because he had work for him to do the rest of the week; that some time ago, about two years ago, the laborer

---

ments on the laborer-employer relationship of a labor accident covered by that Act, and on the condition of insured employer or not, other than the pronouncements made by the Manager on the matter, *quaere*. We consider the case under the same legal theory invoked in the cause of action of the complaint: of the stipulation, and on the conclusions of law proper of the court, namely, in pursuance of the cause of action granted by § 31 of the Workmen's Accident Compensation Act in the case of an accident covered thereunder.

had worked by the day for Talavera cutting and loading cane. She said that the week he died—the accident occurred on Sunday—he worked for defendant García and that the previous week he had worked for Nicolás Rodríguez; that he worked for Timoteo Jiménez only the day he went with him to fell the palm trees. The laborer's father testified that he saw Talavera long after his son's death and that they did not mention the accident; that the latter only told him that he had spoken to him about felling the palm trees without setting the day. The laborer's son testified that he went to take breakfast to his father and found him seriously injured; that the only ones there were his father and Timoteo Jiménez and that there was no one else, and that the latter said to him, go and see your grandfather and tell him that he must come here; there were six fallen palm trees and the seventh one which killed him. The palm tree which killed his father was big and had a curvature or bend in the middle; it was not straight.

As to codefendant García, the fact that the accident occurred in his farm is not in question. The laborer's son testified that when he returned with his grandfather there were more people there; defendant García arrived with his wife; that in the middle of June 1957, the witness went to Vicente García's house in the company of his attorney Díaz Marchand, and that the former pointed to them the scene of the accident, and on that occasion García said that he was going to fell the palm trees which damaged the farm because there were rats in the leaves and they ate the cane and did damage; that he had ordered that they be felled. The foregoing is the entire contents of plaintiffs' evidence on the connection of these defendants with the accident.

The only evidence in the record on the occurrence of the accident was offered by defense witness Timoteo Jiménez. He said that the palm trees were on the border or edge of a valley or plain surrounded by hills where there were five

cuerdas of sugar cane. Five palm trees had been felled and the one which caused the accident was quite large and had a bend in the middle. The occurrence was described as follows in the witness' very words: "When he let the palm tree go, it fell to the ground by itself; then he kept looking at the palm tree which tilted up with the blow; he was looking and as the trunk fell again it struck him... The palm tree is in this position when he was cutting it. He gives it a blow on this side first and then over here, and then on this side, and when the palm tree fell, that it turned around, the end of the palm tree which turned around, the trunk came and went like this and stood up, and when it came he was looking forward in that direction without realizing the danger, and when the trunk did like this it struck him... It was only one blow on the head... The palm tree was very long and had a bend ...it had a bend in the middle... He let it go and kept watching it as it fell to the ground... it fell and since it had a bend in the middle, when the end hit there, the trunk first turned around and tilted up, and he was looking at the palm tree when the trunk turned around on the ground and struck him on the head... Q. With what part did it hit him? With the end where he had cut it. Q. Did the palm tree fall on him at any moment? At no time." [Cross-examined] "When the palm tree did like this to break loose, he stopped cutting it and kept watching it... Q. Did he run to one side? He stayed right here where he was cutting the trunk... He remained at a distance... Q. Very close? That's it, if he had not been so close it would not have hit him... Q. Did the palm tree fall forward? Yes, sir. Q. Where was the bend, downward or upward? Upward. Q. So the palm trees which had the bend in the upper part fell and tilted up? The lower end of the trunk. Q. Didn't the bend rebound? No, sir. The end where it was cut rebounded because when the bend hit the ground, the end did like this."

The witness further testified that two weeks ago he had asked García for some palm trees; that the latter authorized him to cut the ones he needed whenever he wanted to; he had agreed with the laborer to cut them whenever he had an opportunity to do the work, and that that morning the laborer called for him at his house while he was still in bed and they went to do the work. That same morning the witness spoke with García so he would know that they were going to do the cutting, and García reiterated his authorization and again told him to fell those he wanted. He reported the accident to the State Insurance Fund because he was an insured employer engaged in the cultivation of sugar cane in which he regularly used 10 to 12 men to cut the cane and about three peones when no cutting was to be done. He said that he hired the laborer to do this work because he was used to work with an ax and knew the work; that they had been working felling trees for making charcoal, and knew him to be an able "axman." Only the two of them did the work. There was no one there.

The State Insurance Fund determined that this accident was covered by the Workmen's Accident Compensation Act and that the laborer's employer at the time of the accident was Timoteo Jiménez, an insured employer.[3] Therefore, neither the Act of March 1, 1902 (Sess. Laws, p. 150)[4] nor any other provision of a general law making an employer

---

[3] Even though we accepted that the trial court had jurisdiction and power under the cause of action exercised herein to make contrary pronouncements, the uncontroverted facts in the record show the laborer-employer relationship determined by the Fund and no other.

[4] This Act holds an employer liable for the injury caused to an employee who is in the exercise of due care and diligence, by reason of any defect in the condition of the ways, works, or machinery used in the business of the employer, which arose from or had not been discovered or remedied, by reason of the negligence of the employer or of any person in his service and entrusted by him with the duty of seeing that the ways, works, or machinery were in proper condition; or by reason of the negligence of any person in the service of the employer entrusted with the exercising of superintendence as his sole or principal duty.

liable to his employee, or a person to another person, for his negligence, is applicable in those cases in which the accident is not covered by the Workmen's Accident Compensation Act, nor could this case be considered as a claim for damages which a laborer is at liberty to make against an uninsured employer under the provisions of §§ 15, 16, and 20 of that Act. *Cf. Wirshing & Co.* v. *Buscaglia, Treas.*, 64 P.R.R. 346; *Onna* v. *The Texas Co.*, 64 P.R.R. 497; *Rivera* v. *Industrial Commission*, 67 P.R.R. 526.

■ The decision of this case rests solely and exclusively on the provisions of § 31 of the Workmen's Accident Compensation Act, as amended by Act No. 70 of June 15, 1955 (Sess. Laws, p. 258). The question for decision is whether in the light of the evidence in the record the laborer died *under circumstances* making defendants herein liable as third persons.

Having established the fact that they were not the laborer's employers as respects this job, and that they were neither his agents in charge of the work or of its vigilance or supervision, defendants were not bound by law to provide the means of safety for the work described in the complaint, nor were they by law under the obligation to prevent the performance of the work under the alleged adverse weather conditions, which omissions, according to the trial court's conclusion, were the cause of the damage, assuming that in either case the accident was due to those factors.

Even if it had been defendants' duty under the law to look after the laborer's safety at that place, the indisputable facts in the record show that the accident was not due to such omissions because when he was getting ready to fell this palm tree after having felled several trees, a sudden gust of wind uprooted it and threw it on the laborer trapping him under its weight, as alleged in the complaint and found proved by the trial court. According to Jiménez's description, the accident was not due to the weather conditions nor to the ab-

sence of other alleged safety factors. Under the conditions present at that place, the victim had cut several palm trees without suffering injury. Everything points to the fact that it was an unfortunate accident because the last palm tree had a bend or curvature in the middle which, as described graphically by witness Jiménez, the only person who witnessed it at the place, was due to a natural phenomenon of physical laws when the middle bend or curvature hit the ground, which is perfectly understandable and logical for those who have some knowledge of these things, but which unfortunately the laborer did not foresee or anticipate so as to guard against the risk involved, and kept looking at the palm tree without moving away from the cut end which injured him with the reaction movement.

■■ Appellees also invoke defendants' liability under the doctrine of the duty of property owners to see that the persons authorized or permitted to be therein do not suffer injury. There is no question that defendant García authorized this laborer as well as his employer to be in his farm, but such norm of liability does not apply to him since the damage was not caused by any visible or invisible dangerous condition maintained or permitted by him in the property. They also invoke the doctrine of *res ipsa loquitur*. The manner in which the accident occurred rules out every possibility of applying this doctrine to the case, which governs in situations in which an accident ordinarily causing damage should not occur, and the agent causing the same is under the control and supervision of a person, in which case the doctrine grants to the injured party as starting point such person's negligence. *Cf. Matta v. Pueblo Super Market*, 80 P.R.R. 498; *Martínez v. U.S. Casualty Co.*, 79 P.R.R. 561, 567; *Rodríguez v. Aponte*, 78 P.R.R. 719, 724; *Cintrón v. A. Roig, Sucrs.*, 74 P.R.R. 957, 964; *Román v. Mueblería Central*, 72 P.R.R. 320; *Hermida v. Feliciano*, 62 P.R.R. 54; *Ramos v. Water Resources Authority*, ante, p. 572. In the work of fell-

ing trees it is only natural and common that accidents and injuries should occur, depending on the greater or lesser degree of foresight and care in the performance of the work.

The loss of a life is a distressing fact, much more so when life is lost in a labor accident while a human being is engaged in the noble function of earning his living and that of his family. No one would want the family of a laborer, victim of an accident, to be destitute of protection. In view of the indisputable facts in the record, we would stretch the concepts of legal liability to others if we held that the labor accident in this case occurred under circumstances making defendants liable for the damage as third parties, under § 31 of the Workmen's Accident Compensation Act, or under any other precept imposing legal liability for act or omission.

The judgment appealed from will be reversed and another judgment rendered dismissing the complaint, with costs in the trial court on plaintiffs, without including attorney's fees.

